UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| GREGORY A. GEIMAN, as he is ADMINISTRATOR, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4 HEALTH AND WELFARE FUND, et al., <br><br>　　　　　Plaintiffs, <br><br>　　　　　v. <br><br>L.E.C. CIVIL CONTRACTORS, LLC, et al., <br><br>　　　　　Defendants. | Civil Action No. 22-10231-JCB |

ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
[Docket Nos. 88]

April 17, 2024

The Plaintiff Funds[1] have moved for summary judgment against all defendants. Docket No. 88.[2] For the following reasons, this Court denies the motion.

I.  PROCEDURAL BACKGROUND

The Plaintiff Funds brought this ERISA action to enforce the obligation of Defendants L.E.C. Civil Contractors, LLC ("LEC") and Linskey Excavating Co. ("Excavating")

---

[1] The Plaintiff Funds are the International Union of Operating Engineers Local 4 Health and Welfare, Pension, Annuity and Savings Funds, Labor Management Cooperation Trust, Hoisting and Portable Engineers Local 4 Apprentice and Training Fund, and International Union of Operating Engineers National Training Fund. Gregory A. Geiman is the administrator of the Plaintiff Employee Benefit Funds.

[2] On December 1, 2022, the parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes and the case was reassigned to the undersigned. Docket Nos. 61, 62.

1

(collectively, the "Corporate Defendants") to make contributions under the terms of a collective bargaining agreement and to recover damages for alleged fraud and misrepresentation. In addition to the Corporate Defendants, the amended complaint names William M. Linskey, Jr., who is the owner and manager of LEC and owner and sole officer of Excavating. See Amended Verified Complaint ("AC") at ¶¶ 11, 12.

On March 15, 2023, this Court granted Defendants' counsel's motion to withdraw. Docket No. 72. This Court warned the Corporate Defendants that because corporations are unable to appear pro se, failure to retain successor counsel may result in a default judgment. See id. at 3. To date, no counsel has made an appearance on behalf of the Corporate Defendants. Accordingly, on September 22, 2023, this Court granted the Plaintiffs' motion for entry of default and entered a default against the Corporate Defendants. Docket Nos. 83, 84. Also on that date, this Court denied the Plaintiff Funds' motion for a default judgment against the Corporate Defendants without prejudice to renewal after all claims in this action were resolved. Docket No. 85.

On October 27, 2023, the Plaintiffs filed a motion for summary judgment against all Defendants. Docket No. 88. Linskey did not file an opposition to the motion by the deadline. On December 6, 2023, this Court entered an order giving Linskey another opportunity to respond to the motion by December 29, 2023. Docket No. 94. To date, Linskey has not filed an opposition.

This Court held a hearing on the motion for summary judgment on March 20, 2024. Linskey did not appear. On March 22, 2024, the Plaintiffs filed a supplemental memorandum in support of their motion for summary judgment (the "Geiman Supp. Aff."). Docket No. 99.

II.     FACTS[3]

On July 13, 2020, LEC agreed in writing to be bound to the terms of the Restated Agreements and Declarations of Trust establishing the Plaintiff Funds, to the terms of a collective bargaining agreement ("CBA") with the International Union of Operating Engineers Local 4 requiring contributions to the Plaintiff Funds.[4]  The CBA requires employers to make contributions to the Plaintiff Funds for each payroll hour worked by each employee covered by the CBA.[5]

Employers are required to submit remittance reports delineating payroll hours for each of their covered employees no later than the 19th day of the month following the month in which the work is performed.[6]  Delinquent contributions are charged interest at the rate of 1% per month.[7]

LEC became delinquent in payment of benefit contributions in the spring of 2021.[8]  LEC and Linskey pledged two pieces of equipment as collateral to secure a payment plan.[9]  The Funds duly perfected their security interest by filing a UCC-1 financing statement.[10]

---

[3] The facts are taken from the Plaintiffs' Statement of Undisputed Material Facts (Docket No. 89) ("SOF").  Because Linskey did not file a response to Plaintiffs' statement of undisputed material facts, this Court deems all facts presented therein admitted.  See L.R. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.").

[4] SOF ¶ 1.

[5] SOF ¶ 2.

[6] SOF ¶ 3.

[7] SOF ¶ 5.

[8] SOF ¶ 6.

[9] Id.

[10] SOF ¶ 7.

LEC and Linskey grossly under-reported the hours worked by LEC employees from July 2020 through the payment period in the amount of $149,515.32.[11] They also gave false information regarding the collateral pledged to secure the debt in an effort to avoid paying benefit contributions for covered work.[12]

LEC submitted certified payroll records, signed by Linskey, to the Town of Salem, New Hampshire that contain false information.[13] Specifically, the certified payroll records include operators who do not appear on LEC's remittance reports or payroll records.[14]

On February 16, 2022, Judge Casper approved an attachment on certain property and equipment believed to be owned by LEC.[15] The Deputy Sheriff executed the attachment order on February 19, 2022.[16] An UCC-1 financing statement was filed an hour after the Court's order of attachment issued.[17] The financing statement was filed by LEC's surety and claimed to perfect a security interest in equipment under a security agreement dated November 13, 2020 with various LEC affiliates.[18] The Funds' interest in the collateral was senior to the surety's interest because it was perfected earlier, but the surety's interest in the other three pieces appeared to be senior to the Funds' interest.[19]

---

[11] SOF ¶ 8.
[12] SOF ¶ 9.
[13] See SOF ¶¶ 11-16.
[14] SOF ¶ 14.
[15] SOF ¶ 18; Docket Nos. 18, 19.
[16] SOF ¶ 19.
[17] SOF ¶ 20.
[18] SOF ¶ 21.
[19] SOF ¶ 22.

The Funds immediately notified the surety of their seizure of LEC's equipment.[20] The surety did not make any demand for return of any equipment.[21] On May 4, 2022, when the Funds were preparing for a sale of the collateral on which the Funds had foreclosed, the surety's counsel gave the Funds documents showing that one of the pieces of collateral, the Caterpillar 336 DL Hydraulic Excavator serial number W3K01237 ("Cat Excavator"), is not owned by LEC or Linskey but by Excavating and there is a senior lien.[22] Defendants also warned that the other piece of equipment pledged as collateral was also owned by Excavating.[23]

LEC and Linskey made numerous false statements in the Security Agreement as to the ownership of the collateral and the lack of other liens.[24] Despite the signed and notarized representations and certifications in the Security Agreement, including a certification under oath, neither LEC nor Linskey owned the collateral.[25]

LEC and Linskey pledged collateral belonging to Excavating to secure a debt owed by LEC.[26] As a result, the Funds were unable to sell the equipment and requested that the Deputy Sheriff arrange for its return, which required the Funds to pay $60,805.00 for storage and transport fees, which would ordinarily be deducted from the proceeds of a sale or auction.[27] The Deputy Sheriff's Office substantially reduced the storage and transport fees in view of the Funds'

---

[20] SOF ¶ 23.
[21] SOF ¶ 24.
[22] SOF ¶ 25.
[23] SOF ¶ 26.
[24] SOF ¶ 27.
[25] SOF ¶ 28.
[26] SOF ¶ 29.
[27] SOF ¶ 30.

5

inability to sell the equipment due to the Defendants' fraud.[28]

Judge Casper issued a preliminary injunction ordering Excavating to produce its payroll records for an audit.[29] Excavating complied in part and allowed the Funds to perform a partial payroll audit.[30] The Funds were able to recover from a third-party surety the principal amount owed by Excavating as determined by the partial payroll audit.[31] The Funds have not recovered the interest charges on late payments or legal fees and costs associated with the partial audit.[32]

Since May 5, 2022, the Plaintiffs were able to recover three payments from third parties such as the surety and the Town of Salem, NH in the respective amounts of $101,797.74, $34,432.80, and $47,000.000.[33] The final payment was a compromise of the Funds' claim for $65,077.63 based on the surety's arguments regarding hours that may not have been spent on covered work.[34] As a result of the Plaintiffs' efforts, Defendants now owe the Funds a total of $158,004.03, broken down as follows:

| | |
|---|---|
| $15,816.98 | Interest on late-paid contributions; |
| $15,816.98 | Statutory liquidated damages; |
| $6,286.80 | Auditor's fees |
| $59,278.27 | Legal fees and costs of collection |

---

[28] SOF ¶ 31.
[29] SOF ¶ 35; Docket No. 53.
[30] SOF ¶ 36.
[31] SOF ¶ 37.
[32] SOF ¶ 38.
[33] SOF ¶ 39.
[34] SOF ¶ 40.

   $60,805.00  Equipment Transport and storage fees[35]

III. ANALYSIS

  A. There Is No Need To Enter Summary Judgment Against
    The Corporate Defendants Because They Have Been Defaulted

The Plaintiffs seek entry of summary judgment against all Defendants, including the Corporate Defendants.  See Docket No. 88.  It appears unnecessary to seek summary judgment against the Corporate Defendants, however, as they have been defaulted.  "A defaulting party 'is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.'"  Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002) (citation omitted).  Based on the allegations in the Amended Verified Complaint, this Court finds that there is a factual basis for liability against the Corporate Defendants on Counts I (delinquent contributions in violation of ERISA against LEC), Count II (delinquent contributions and deductions from employees' wages in violation of the Labor Management Relations Act ("LMRA") against LEC), Count IV (intentional misrepresentation and fraud on ERISA funds against LEC), and Count V (alter ego liability of Excavating).  In addition, the Plaintiffs have provided sufficient evidence to support their request for damages in the amount of $158,004.03.

As discussed below, this Court finds that the Plaintiff Funds have not shown that they are entitled to judgment as a matter of law on their claims against Linskey.  Accordingly, for the same reasons set forth in this Court's September 22, 2023 order, this Court will not enter a final judgment against the Corporate Defendants at this time.

---

[35] SOF ¶ 42; see also Geiman Supp. Aff. ¶ 2; Affidavit of Kathryn S. Shea (Docket No. 92) ("Shea Aff.") at ¶ 2.

B.    <u>Motion For Summary Judgment Against Linskey</u>

1.    <u>Standard Of Review</u>

Here, despite being given additional time to respond to Plaintiffs' motion, <u>see</u> Docket No. 94, Linskey did not file an opposition or otherwise respond to the motion. "Even so, a court confronted with an unopposed summary judgment motion is still required 'to test the undisputed facts in the crucible of the applicable law in order to ascertain whether [summary] judgment is warranted.'" <u>Rivera-Aponte v. Gomez Bus Lines, Inc.</u>, 62 F.4th 1, 8 (1st Cir. 2023) (citations omitted). However, the court may "take as uncontested all evidence presented with" the unopposed motion. <u>Perez-Cordero v. Wal-Mart Puerto Rico</u>, 440 F.3d 531, 533-534 (1st Cir. 2006) (citation omitted).

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Carroza v. CVS Pharm., Inc.</u>, 992 F.3d 44, 56 (1st Cir. 2021) (citations omitted). The burden is on the moving party to show, based on the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). A dispute is genuine where the evidence "is such that a reasonable jury could resolve the point in the favor of the non-moving party." <u>Rivera-Rivera v. Medina & Medina, Inc.</u>, 898 F.3d 77, 87 (1st Cir. 2018) (citation omitted). A material fact is one with the "potential of changing a case's outcome." <u>Doe v. Trustees of Bos. College</u>, 892 F.3d 67, 79 (1st Cir. 2018).

2.    <u>Discussion</u>

The Plaintiff Funds have brought two claims against Linskey personally. Count III of the Verified Amended Complaint asserts a claim for breach of fiduciary duty by Linskey. Verified Amended Complaint ("VAC") at ¶¶ 44-46. Count IV asserts a claim for intentional

8

misrepresentation and fraud against Linskey.  At oral argument, however, counsel for the Plaintiff Funds explained that they were not moving for summary judgment against Linskey on these claims.  Rather, the Plaintiff Funds seek to hold Linskey personally liable by piercing the Corporate Defendants' veil.

"[A] plaintiff wishing to pierce the corporate veil to hold a particular defendant liable must set forth that intention in the complaint, and must do so in a manner that, at a minimum, satisfies the notice pleading requirements of Rule 8(a) [of the Federal Rules of Civil Procedure]." Northstar Marine, Inc. v. Huffman, No. 13-0037-WS-C, 2014 WL 4854843, at *9 n.16 (S.D. Al. Sept. 29, 2014) (collecting cases).  Here, while the Complaint explicitly sets out an alter ego theory[36] as to Excavating, see AC ¶¶ 12, 50-51, nothing in it would have placed Linskey on notice that the claims against him were rooted in a theory of piercing the corporate veil.  In any event, on the record before it, this Court cannot conclude that the Plaintiff Funds have established that the corporate veil should be pierced to hold Linskey liable in this case.

Whether to pierce the corporate veil to satisfy a claim under ERISA is decided by reference to federal common law.  See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1092 (1st Cir. 1992) (citations omitted).  Federal law provides no single "litmus" test for determining when it is appropriate to pierce the corporate veil.  Brotherhood of Locomotive Eng'rs v. Springfield Terminal Ry. Co., 210 F.3d 18, 26 (1st Cir. 2000).  Instead, federal law is "founded only on the broad principle that a corporate entity

---

[36] "The doctrines of veil piercing . . . and alter ego are interrelated and litigants often use the terms interchangeably.  Indeed, a party may seek to pierce a corporate veil under an alter ego theory which is equitable in nature." In re Blast Fitness Group, LLC, 603 B.R. 654, 669 (Bankr. D. Mass. 2019) (citations omitted).  "Nevertheless, veil piercing and alter ego can be distinguished." Id.  "The former asks a court to hold A vicariously liable for B's debts, while the latter asserts that A and B are the same entity and therefore liability is direct." Id.

may be disregarded in the interests of public convenience, fairness and equity." Id.  A court deciding whether it may be appropriate to pierce the corporate veil should consider three factors: (1) the respect shareholders pay to the corporate entity; (2) the fraudulent intent of the defendants; and (3) the degree of injustice to be visited on the litigants if the corporate entity is recognized.  Crane v. Green & Freedman Banking Co., 134 F.3d 17, 22 (1st Cir. 1998).  In other words, a plaintiff seeking to have the corporate veil pierced must show "three things: lack of corporate independence, fraudulent intent, and manifest injustice." 163 Pleasant Street Corp., 960 F.2d at 1093.

While the record contains evidence that LEC and Excavating were alter egos of each other, see SOF ¶¶ 33-35, it does not contain sufficient facts to establish that the corporate veil should be pierced to hold Linskey personally liable.  There is nothing in the record regarding whether, for example, Linskey treated the corporations' assets as his own.  See United States v. Bridle Path Enterprises, Inc., No. Civ. A. 99-11051-GAO, 2001 WL 1688911, at *3 (D. Mass. Dec. 4, 2001) (citing Crane, 134 F.3d at 21) ("Piercing the corporate veil requires a highly fact specific inquiry into the degree to which the defendants deliberately failed to treat their corporation and its assets as a entity separate from themselves.").  Rather, the Plaintiff Funds' submission focuses on the fraud allegedly perpetrated by Linskey.[37]  See Docket No. 90 at 9-10. Fraud, however, is only one of the three factors necessary to pierce the corporate veil.  Though an essential factor, it is not sufficient on its own.  See 163 Pleasant Street Corp., 960 F.2d at 1093.  Accordingly, this Court finds that the Plaintiff Funds have not shown that they are entitled to judgment as a matter of law on their claims against Linskey.

---

[37] The Plaintiff Funds' submissions also do not contain an analysis regarding the manifest injustice factor.

IV.     ORDER

For the foregoing reasons, I deny the Plaintiff Funds' motion for summary judgment with respect to the claims against Linskey. Within two weeks, the Plaintiffs shall file a proposed schedule for final resolution of the case, including the claims against Linskey.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge